*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-09-00677-CR

Nicholas **GALLEGOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-4323
Judge Sharon S. MacRae, Judge Presiding

Opinion by:   Phylis J. Speedlin, Justice

Sitting:      Karen Angelini, Justice
              Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  February 23, 2011

AFFIRMED IN PART; VACATED IN PART

In six issues, Nicholas Gallegos challenges his convictions for aggravated sexual assault with a deadly weapon, aggravated kidnapping with a deadly weapon, burglary of a habitation with intent to commit aggravated kidnapping, burglary of a habitation with intent to commit assault, and assault.  With the exception of vacating the judgment on the count of burglary of a habitation with the intent to commit aggravated kidnapping, we affirm the judgment of the trial court.

**BACKGROUND**

Kathleen Ramos testified that on August 8, 2008, Gallegos broke into her home, assaulted her, and then forced her to drive around with him while he continued to physically and sexually abuse her. Ramos is the mother of Gallegos's two young children, Faith and Aiden. Ramos and Gallegos were never married and broke up in January 2008.

On the night in question, Ramos was at her mother's house with her two children and two friends, Gabriela Agueros and Sara Hernandez, getting ready to go to a party. Gallegos had been sending Ramos text messages and calling her about visiting the children. Gallegos left one voice mail message, saying, "I know you're inside your house, I can see your lights on." Ramos heard knocking on a window and told her friends that Gallegos was outside and to turn off all the lights in the house. Ramos and Agueros ran to the room where Faith was sleeping; there they noticed that the air conditioning unit was on the floor and saw Gallegos entering through the window. They picked up Faith and ran back to the front bedroom where Hernandez was waiting with Aiden.

Gallegos kicked open the locked bedroom door, and threw Ramos onto the bed and beat her. Gallegos also assaulted Agueros and Hernandez. Gallegos managed to push Ramos out of the house and dragged her by the hair and told her to go to his car, but Ramos refused. Gallegos went back in the house to get Faith; he put Faith in the car and continued assaulting Ramos, kicking her in the face and stomach. Ramos got into Gallegos's car because she "had no choice," "because first of all, he had my daughter and he forcefully put me in the car." Gallegos returned to the house, and Ramos feared he would also take Aiden, but Gallegos came back out without the child. Gallegos then drove away with Ramos and Faith in the car.

Agueros and Hernandez gave testimony similar to Ramos's and described Gallegos's assault of all three women. Agueros specified that Gallegos called Ramos over ten times that night, and that at one point Ramos put Gallegos on speaker phone and Agueros heard him say that he wanted to see her and that he was going to "show up" at her mother's house; Gallegos sounded very mad and Ramos was scared. Eventually, Ramos stopped answering Gallegos's calls; later, they heard a car driving back and forth by the house. After the assault in the house, Gallegos dragged Ramos outside by her hair, and when Agueros tried to help Ramos, Gallegos told her to get away and threatened her with a baseball bat. Agueros stated that Gallegos forced Ramos into his car. Agueros was afraid that Ramos was going to die because Ramos had said that Gallegos was going to kill her. Agueros and Hernandez ran to a neighbor's house to call police.

Ramos stated that once in the car, Gallegos hit her with a baseball bat and threatened to kill her. Gallegos drove around, making several stops, and forced Ramos to give him oral sex by threatening her with the bat. Ramos's brother, Andrew, called Gallegos's cell phone and Gallegos instructed Ramos to answer it and tell Andrew that she was okay. Gallegos finally stopped at a convenience store and left the car running while he went inside; Ramos got in the driver's seat and drove away from the store.[1] She called Andrew and told him that she had escaped, but that she had no idea where she was. Andrew told her to exit the highway and get to a safe place; Ramos pulled into a McDonald's parking lot and attracted the attention of two policemen, including Officer Derek Villegas of the New Braunfels Police Department. She was taken to the hospital and examined.

---

[1] The record reflects that Faith remained in the car when her mother drove away from the convenience store. The record does not contain any further reference to Faith.

Officer Villegas did an inventory search of the car, and seized strands of hair, a cell phone, a baseball bat, and a white t-shirt with blood on it. At trial, Villegas described Ramos's obvious injuries, stating, "[s]he had swelling, trauma to the left side of her face and head and she had blood on her face." The officer could tell that Ramos had been through something traumatic.

Gallegos testified on his own behalf. He explained that he went to Ramos's house to pick up the children, and became concerned when he saw the lights go out. He went to Ramos's bedroom window and was trying to see through the gap between the air conditioning unit and the window frame when he accidentally pushed the unit in. He ran to the front of the house and entered through the unlocked front door. He and Ramos began to argue and hit each other. He left the house and put Faith in the car, and Ramos followed and tripped on the pavement. Ramos got into the car and Gallegos drove off.

While he drove, Ramos scratched, kicked, hit, and spit on him. Gallegos "blanked out [and] lost control," and pushed and slapped Ramos. Ramos began assaulting herself, pulling her hair and hitting herself. Gallegos stopped at a convenience store so Ramos could clean herself up before going to his mother's house, but Ramos refused to go in. Gallegos left the car running and went in the store; as he was buying a fountain drink, Ramos drove away.

### DISCUSSION

On appeal, Gallegos raises the following six issues: (1) his right to be free from double jeopardy was violated when he was convicted of two burglary offenses based on a single entry; (2) his right to be free from double jeopardy was violated when he was convicted of the lesser-included offense of aggravated kidnapping and the offense of burglary predicated on aggravated kidnapping; (3) the trial court erred in allowing the jury to consider "other evidence" during

deliberations; (4) the trial court erred in submitting a supplemental jury instruction; (5) he received ineffective post-trial assistance of counsel; and (6) cumulative error.

### *Double Jeopardy*

We begin by addressing Gallegos's second issue, in which he complains that the convictions for burglary with intent to commit aggravated kidnapping and aggravated kidnapping violate double jeopardy principles because aggravated kidnapping is a lesser-included offense of burglary as charged. *See Bigon v. State*, 252 S.W.3d 360, 369-70 (Tex. Crim. App. 2008) (multiple punishments for the same offense violate double jeopardy principles). Although Gallegos did not make a double jeopardy objection at trial, we address this issue because the double jeopardy violation is apparent on the face of the record, and no legitimate state interest would be served by applying the usual rules of procedural default.[2] *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense for which he has previously been acquitted or convicted, and also protects him from being punished more than once for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008). To determine whether multiple punishments violate the Double Jeopardy Clause, we compare the elements of the offenses as pled in the indictment. *Littrell*, 271 S.W.3d at 276. To determine whether jeopardy attaches, we apply the "same-elements" test and determine whether each offense contains an element not contained in the other. *See Blockburger v. United States*, 284

---

[2] "In cases in which the trial court either knew or should have known of the jeopardy problem, no purpose is served by enforcing the state procedural rule and the defendant may assert this interest after trial." *Beltran v. State*, 30 S.W.3d 532, 533 n.1 (Tex. App.—San Antonio 2000, no pet.) (quoting *DeMoss v. State*, 12 S.W.3d 553, 559 n.2 (Tex. App.—San Antonio 1999, pet. ref'd)).

U.S. 299, 304 (1932); *Watson v. State*, 900 S.W.2d 60, 61-62 (Tex. Crim. App. 1995). If the second offense contains an element not found in the first offense, then double jeopardy protections are not violated. *Watson*, 900 S.W.2d at 61.

In *Langs v. State*, the Court of Criminal Appeals stated that "[i]t is well-settled that a defendant may not be punished for both the underlying felony and burglary if the burglary allegation is that the defendant entered a home without the consent of the owner and *then* committed the underlying felony within the home as defined in § 30.02(a)(3)." *Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006). In that situation, a conviction for *either* burglary *or* the underlying felony may stand, but not both. *Id*. The Court went on to state that "it is equally well settled that a substantive felony and a burglary by entering a home without the consent of the owner and with the *intent* to commit that felony are two distinct offenses. The entry of the home with felonious intent and the felony committed within are two distinct criminal acts, and each requires the State to prove an element that the other does not." *Id*.; *see* Tex. Penal Code Ann. § 30.02(a)(1) (West 2003). Thus, a defendant's convictions for burglary under section 30.02(a)(1) *and* commission of the underlying felony may both stand without violating double jeopardy. *Langs*, 183 S.W.3d at 686.

Here, Count III of the indictment alleged that Gallegos committed burglary under two alternative manners and means, namely (1) that he entered the habitation with the *intent* to commit aggravated kidnapping, *or* (2) that he entered the habitation and then attempted or did commit aggravated kidnapping. *See* Tex. Penal Code Ann. § 30.02(a)(1), (3) (West 2003). The disjunctive charge allowed the jury to determine, under one burglary theory, that Gallegos had formed the requisite intent to commit an aggravated kidnapping at the time he entered the house, which is a distinct offense from the actual commission of aggravated kidnapping as

alleged in Count II of the indictment. *See Langs*, 183 S.W.3d at 687. Under that theory, the State was therefore required to prove an element that was not an element of the other alleged offense. Thus, the State argues there is no double jeopardy violation as long as there is sufficient evidence to support the theory alleged in the first paragraph of Count III, i.e., that Gallegos intended to commit the offense of aggravated kidnapping at the time he entered Ramos's home. *See id.* (when separate theories for an offense are submitted to the jury disjunctively, a double jeopardy violation is not clearly apparent from the face of the record if there is sufficient evidence to support a theory that would not violate double jeopardy).

Although intent can be inferred from circumstantial evidence, such as acts, words, and conduct of the accused, *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004), we cannot conclude that the evidence in this record was sufficient to establish that Gallegos entered Ramos's home with the intent to commit aggravated kidnapping. *See Linder v. State*, 828 S.W.2d 290, 294 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) ("To prove intent to commit a felony . . . in a prosecution for burglary, the State must show that the defendant's intent existed at the time of his entry."). The evidence simply does not demonstrate that, at the time he entered the house, Gallegos intended to abduct Ramos by using and threatening to use deadly force and by secreting and holding her in a place where she was not likely to be found. *See* TEX. PENAL CODE ANN. § 20.04 (West 2003). Accordingly, the jury could only have based Gallegos's burglary conviction on section 30.02(a)(3), requiring that he entered the habitation and then attempted to commit or committed aggravated kidnapping. *See* TEX. PENAL CODE ANN. § 30.03(a)(3) (West 2003); *Langs*, 183 S.W.3d at 686. Because the elements of aggravated kidnapping are subsumed within the elements of burglary under section 30.02(a)(3), as pled in the indictment, we conclude that in this case, aggravated kidnapping is a lesser-included offense

of burglary of a habitation predicated on aggravated kidnapping; therefore, Gallegos was punished twice for the same criminal conduct in violation of double jeopardy principles.

When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the "most serious" offense and vacate the other conviction. *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). "[T]he most serious offense is the offense of conviction for which the greatest sentence was assessed." *Id.* at 338. Here, both the aggravated kidnapping and burglary predicated on aggravated kidnapping offenses were charged as first degree felonies and Gallegos was sentenced to forty years' confinement on each conviction, with the sentences to run concurrently. *See* TEX. PENAL CODE ANN. §§ 20.04(c); 30.02(d) (West 2003). Thus, we cannot distinguish between the two merely by examining their respective punishments. However, because aggravated kidnapping is most often charged as a first degree felony,[3] while burglary, depending on the circumstances, can be charged either as a state jail felony, second degree felony, or first degree felony, we conclude the most serious offense is aggravated kidnapping. Accordingly, we affirm the conviction for aggravated kidnapping, and vacate the conviction for burglary with intent to commit aggravated kidnapping. Our vacating of this burglary conviction renders Gallegos's first issue, in which he complains that two burglary convictions arising from a single unlawful entry violate double jeopardy principles, moot.

### *"Other Evidence" under Texas Rule of Appellate Procedure 21.3(f) and Supplemental Jury Instruction*

In his third and fourth issues, Gallegos contends the trial court erred in admitting a cell phone purported to belong to him because the jury later used the phone to discover other

---

[3] Aggravated kidnapping is always a first degree felony, unless the defendant proves by a preponderance of the evidence at the punishment stage that he voluntarily released the victim in a safe place; in that case, the offense is classified as a second degree felony. *See* TEX. PENAL CODE ANN. § 20.04(c), (d) (West 2003).

evidence that was adverse to him. After Ramos stopped at the McDonald's for help, Officer Villegas collected a cell phone lying on the passenger seat of Gallegos's car. Villegas placed the phone, along with strands of hair he collected from the car, in the evidence vault at the New Braunfels police station. Officer William Armstrong of the San Antonio Police Department later picked up the evidence and brought it to San Antonio, where he deposited it in a secure locker. At trial, the State attempted to introduce the cell phone through Officer Armstrong, but the defense objected that the proper foundation had not been laid to establish that the phone belonged to Gallegos; the objection was sustained. The State next attempted to introduce the cell phone through Officer Villegas, and the defense again objected that "[i]t could not be verified that it belonged to" Gallegos. The trial court sustained the objection. The State then introduced the phone through Ramos, who stated that she recognized State's Exhibit 7 as "Nicholas' Sprint phone" and that both she and Gallegos used the phone to talk to her brother on the night of August 8, 2008. The defense objected to the introduction of the phone, stating, "[a]s far as the phone is concerned, she's identified that the phone looks like his phone. But outside of that, there's nothing else showing that it is his phone." The trial court overruled the objection.

After retiring to deliberate, the jury foreman sent a note to the trial court and the following discussion occurred:

| | |
|---|---|
| Court: | We got a note from the jury. It says, "A juror read a text message on the cell phone. Is this evidence we are permitted to read?" And it's signed by the foreman. Do y'all have any idea what's on the phone? |
| State: | Text messages from the defendant to the complainant. |
| Court: | You've read them? |
| State: | No, Your Honor, I've not read them — |
| Court: | Okay. Do you know what's on there? |
| Defense: | I do not know what's on there, Judge. I mean, it's hard to verify who that message is from. |
| Court: | Well, that's right. But here's the problem. It's in evidence, and they have a right to examine the evidence. So I'm going to tell them "yes." |

`State:      I think it's appropriate, Your Honor.  The testimony from Kathleen said that —
Court:      We'll let them examine the cell phone.  And take this back, please.

On appeal, Gallegos specifically complains that the trial court erred in allowing the jury to consider "other evidence" in violation of Rule 21.3(f) of the Texas Rules of Appellate Procedure.  *See* TEX. R. APP. P. 21.3(f) (requiring that criminal defendant be granted new trial "when, after retiring to deliberate, the jury has received other evidence"); *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003).  We hold that Gallegos waived his complaint regarding "other evidence" by failing to object to the trial court's instruction permitting the jury to consider the text messages.  TEX. R. APP. P. 33.1(a)(1) (requiring a timely and specific objection to preserve error); *Garza v. State*, 126 S.W.3d 79, 82 (Tex. Crim. App. 2004) (the purpose of Rule 33.1 is to inform the judge of the basis of the objection and give her the chance to make a ruling on it).  The trial court simply was not made aware of any objection on the basis of Rule 21.3(f).

Further, Gallegos waived any complaint related to the supplemental jury instruction.  *See Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993) ("When the trial judge responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction.").  Although Gallegos initially objected to the admission of the cell phone on the basis of authenticity, he did not object at the time the trial court instructed the jurors they could consider the text messages contained within the phone.  *See* TEX. R. APP. P. 33.1(a)(1); *Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995) (defendant's failure to object to trial court's written response to jury question waived error on appeal).  Accordingly, we overrule Gallegos's third and fourth issues.

*Ineffective Assistance of Counsel*

Next, Gallegos claims he received ineffective post-trial assistance of counsel because counsel failed to file a motion for new trial and develop a record revealing exactly what "other evidence" the jury discovered on the cell phone. Under the well-established standard in *Strickland v. Washington*, a defendant seeking to challenge counsel's representation must establish that his counsel's performance (1) was deficient and (2) prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). To show deficiency "the appellant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *see also Ex parte McFarland*, 163 S.W.3d 743, 753 (Tex. Crim. App. 2005) (explaining that counsel's conduct was deficient if he failed to act as "'a reasonably competent attorney' would have under the circumstances"). Trial counsel's conduct during his representation, evaluated as a whole, is presumed to fall within the wide range of reasonable professional assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

On this record, we cannot agree that Gallegos has established that his counsel's performance was deficient. "When a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected." *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998). Although Gallegos contends no reasonable attorney would forego filing a motion for new trial when the motion was truly meritorious, we can just as easily presume counsel conferred with his client and discovered the text message was favorable to Gallegos. Because Gallegos has failed to establish the first *Strickland* prong, he cannot

prevail on his claim of ineffective assistance of counsel. Gallegos's fifth issue on appeal is therefore overruled.

### *Cumulative Error*

Finally, Gallegos urges this court to consider the cumulative impact of the errors presented above. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (holding that a number of errors may be deemed harmful in their cumulative effect). Because we have overruled all but one of Gallegos's other points of error, there is no cumulative error requiring reversal. Gallegos's sixth issue is overruled.

### CONCLUSION

Based on the foregoing analysis, the trial court's judgment on Count III of the indictment is vacated, and the judgments on the remaining four counts are affirmed.

Phylis J. Speedlin, Justice

PUBLISH