COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOSE ZAMARRIPA ALVARADO, | § | No. 08-10-00211-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 406th District Court |
| THE STATE OF TEXAS, | § | of Webb County, Texas |
| Appellee. | § | (TC# 2008-CRS-000589) |

**O P I N I O N**

In a bench trial, Appellant, Jose Zamarripa Alvarado, was found guilty of indecency with a child by contact and was sentenced to confinement for eleven years. On appeal, Appellant contends that trial counsel rendered ineffective assistance and that the evidence presented in the guilt-innocence phase of trial was legally insufficient to support his conviction. We affirm.

**BACKGROUND**

By indictment, Appellant was charged with indecency with a child by contact. The complainant was C.J., the eleven-year old daughter of Appellant's wife.

At trial, C.J. testified that Appellant, her mother, and her two sisters slept on two mattresses in one room. Appellant and C.J.'s mother slept on one mattress, and C.J. and her sisters slept on the other mattress, which was separated from the adults' bed. C.J's mother always slept closest to her daughters' mattress, and C.J. always slept closest to her mother. On or about April 1, 2007, C.J. went to bed with her clothes on, including underwear, blue jeans, and a blouse. C.J. awoke in

the night because she saw and felt Appellant using his hand to touch her genitals underneath her underwear. Appellant was in the bed where C.J.'s mother usually slept. After waking up to find Appellant touching her in this way, C.J. moved away from where she was and Appellant left the room for five to ten minutes. Appellant then returned to the adult bed and lay down where he usually slept.

According to Yuridiana de Carmen Aranda, the certified outcry witness from the Children's Advocacy Center of Laredo who interviewed C.J. and testified at trial, C.J. reported that Appellant had unbuttoned C.J.'s pants and touched C.J.'s vagina underneath her underwear with his hand, causing C.J. pain.

Laredo Police Investigator Carlos Villarreal testified that he viewed the video recording of C.J.'s outcry statement and asked Appellant to come to the police station so that he could speak with Appellant about the allegations. After Villarreal advised Appellant of his constitutional rights in English and Spanish, Appellant indicated that he understood his rights, placed his initials next to each of the recited constitutional rights and wrote the word, "Si," in answer to the questions, "Do you understand your rights?" and "Do you elect to waive [your rights] and speak with us at this time?" Within fifteen minutes, Appellant had completed his written statement and was provided an opportunity to review the statement and make any changes or alterations. Appellant's written and signed warnings and voluntary statement were admitted into evidence over the objection of Arturo Gallegos, Appellant's trial counsel. Appellant's confession, which Appellant wrote by hand in Spanish, was read into the record by Villarreal and translated by the trial court's interpreter:

> I, Jose Alvarado, make the following statement: That as [C.J.] accuses me of having touched her private part, I confess that it was so, but without bad

2

intention. It was because of accident. Because my lady, in other words, her mother, was supposed to be in the place that [C.J.] was at. And it was dark. I could not see. And since I'm always touching my lady, I got there and stuck my hand in her. But when I heard her talk, I removed my hand from there. She was not supposed to be in that place. But from there onwards, I tried that it will never happen again, and I never stick my hand into my lady until I am sure that it is her.

Although Appellant attempted to suppress the statement in a pretrial hearing, arguing that it was involuntarily made because he was intoxicated, did not understand his rights, and was not informed of a right to counsel, the trial court had found that Appellant's *Miranda* rights were read to him and that he knowingly, voluntarily, and intelligently waived them, and then ruled that Appellant's statement was admissible in evidence.

Appellant testified both at the suppression hearing and at trial. At trial, Appellant alleged that he did not understand the warnings provided to him before making his statement, that he wrote down what he was told to write at the police station, explained that his definition of "private parts" includes "the breasts, in front on the bottom, and on the back," and declared that he only touched C.J.'s buttocks in the mistaken belief that he was touching his wife. Appellant testified that he spanked C.J. as he routinely and lovingly spanks his wife, and remarked, "If that is touching, yes, I did touch her." As he had at the suppression hearing, Appellant again testified that his statement was involuntarily made and denied any wrongdoing.

At the conclusion of the guilt-innocence phase of the bench trial, the trial court found beyond a reasonable doubt that Appellant was read his *Miranda* rights and knowingly, voluntarily, and intelligently waived them when he consented to provide the voluntary statement that was admitted into evidence, and after taking into consideration all of the evidence that was presented, found Appellant guilty of knowingly engaging in sexual contact with a child. During the punishment phase, the trial court noted that Appellant's statement that he stuck his hand in but

3

removed it when he heard C.J. speak was inconsistent with spanking. The trial court also declared that it took into consideration the appearance and expression of C.J. when she testified and likewise considered the demeanor and manner in which Appellant expressed himself in responding to some of the questions and providing explanations during his testimony. Although the State had offered Appellant plea agreements involving sentences of two years and three years, the trial court sentenced Appellant to eleven years' confinement so that Appellant would "remember this act that [Appellant] committed [upon] an innocent 11-year-old girl" and would remember how old C.J. was when Appellant committed the offense.

## DISCUSSION

## I.

In Issue One, Appellant contends trial counsel was ineffective and prejudiced his defense, thereby depriving him of a fair trial. Appellant specifically complains that Mr. Gallegos rendered ineffective assistance of counsel because: (1) Mr. Gallegos' statements and acts before the trial court in relation to Appellant's refusal to accept the State's plea offers undermined Appellant's presumption of innocence; (2) Mr. Gallegos failed to file a notice of appeal; (3) Mr. Gallegos placed his own interests above Appellant's right to a fair trial without prejudice; (4) Mr. Gallegos failed to "invoke the rule" during the suppression hearing; (5) Mr. Gallegos failed to object to "numerous leading questions" from the complaining witness; (6) Mr. Gallegos permitted exhibits to be improperly admitted without certified translation thereof; (7) Mr. Gallegos failed to ask for a directed verdict; and (8) Mr. Gallegos failed to argue that the evidence against Appellant was insufficient to support his conviction.

In judging any claim of ineffective assistance of counsel, the benchmark must be "whether

4

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We analyze claims of ineffective assistance of counsel under the Sixth Amendment by applying a two-prong test. *Strickland*, 466 U.S. at 686; *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). Under this framework, Appellant must prove by preponderance of the evidence that his counsel's performance was deficient and there is a reasonable probability sufficient to undermine confidence in the result that the outcome would have been different but for counsel's deficient performance. *Ex parte Chandler*, 182 S.W.3d at 353, *citing Strickland*, 466 U.S. at 694.

To establish deficient performance under the first prong of *Strickland*, Appellant must show that counsel was not acting as a reasonably competent attorney and that his advice was not within the range of competence demanded of attorneys in criminal cases. *Ex parte Chandler*, 182 S.W.3d at 354, *citing Strickland*, 466 U.S. at 687. Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Thus, Appellant must overcome the presumption that, under the circumstances, counsel's challenged conduct may be considered sound trial strategy. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App. 1992), *citing Strickland*, 466 U.S. at 689. While strategic choices made after thorough investigation of law and facts relevant to plausible choices are virtually unchallengeable, counsel's cited strategy does not prevent a reviewing court from determining whether a specific act or omission was outside the wide range of professionally competent assistance. *Id.* We judge the reasonableness of counsel's performance according to prevailing professional norms which includes an examination of all the facts and circumstances

involved in a particular case.  *See Strickland*, 466 U.S. at 688, 690.

To meet his burden under the second prong of *Strickland*, Appellant must establish that counsel's constitutionally deficient performance prejudiced his defense; he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Ex parte Chandler*, 182 S.W.3d at 354, *citing Strickland*, 466 U.S. at 694.  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Any constitutionally deficient acts or omissions will be considered in light of the totality of the evidence before the judge or jury when making this determination.  *Strickland*, 466 U.S. at 695; *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex.Crim.App. 2004).

The record on appeal must affirmatively demonstrate trial counsel's alleged ineffectiveness.  *Bone v.* State, 77 S.W.3d 828, 835 (Tex.Crim.App. 2002).  As the Texas Court of Criminal Appeals has repeatedly said, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective-assistance-of-counsel claim on direct appeal because the record on direct appeal is usually undeveloped and inadequately reflective of counsel's reasons for his or her actions at trial.  *Mata v. State*, 226 S.W.3d 425, 430 (Tex.Crim.App. 2007); *compare Cannon v. State*, 252 S.W.3d 342, 350 (Tex.Crim.App. 2008) (although rare, trial record was sufficient to permit appellate court to decide merits of ineffective-assistance claim).  "The lack of a clear record usually will prevent the appellant from meeting the first part of the *Strickland* test, as the reasonableness of counsel's choices and motivations during trial can be proven deficient only through facts that do not normally appear in the appellate record."  *Mata*, 226 S.W.3d at 430.

After conducting a thorough review, we find the record before us underdeveloped and

6

silent regarding the motivations underlying counsel's tactical decisions.[1]  We find nothing in the record that apprises us of counsel's reasons for his acts or omissions at trial and about which Appellant now complains in this direct appeal.  Consequently, Appellant has not overcome the strong presumption that counsel's conduct was reasonable.  *See Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001).  "[C]ollateral attack may be . . . the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record."  *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Crim.App. 1980).   Issue One is overruled.

## II.

In Issue Two, Appellant contends the evidence was legally insufficient to support his conviction because the State failed to prove beyond a reasonable doubt the essential element of intent.  We disagree.

*Standard of Review*

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).  Such a standard not only gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony and to weigh the evidence accordingly, but it also enables the fact finder to draw reasonable inferences from basic to ultimate facts.  *Jackson*, 443 U.S. at 319; *Clayton*, 235

---

[1]  Appellant's brief includes an affidavit that is not contained in either the clerk's record or the reporter's record, the two components which comprise the appellate record.  TEX. R. APP. P. 34.1.  We may not consider factual assertions that are outside the record, nor may a party circumvent this prohibition by submitting an affidavit for the first time on appeal.  *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex.Crim.App. 2004).

S.W.3d at 778. Indeed, the trier of fact is the sole judge of the weight and credibility of the evidence, *see Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied*, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009), and therefore we, in performing our sufficiency review, may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). Instead, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). Moreover, we presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The indictment charged Appellant with indecency with a child and alleged:

> [O]n or about the 1st day of April, A.D., 2007 and anterior to the presentment of this indictment, in the County and State aforesaid, JOSE Z. ALVARADO, did then and there intentionally or knowingly, engage in sexual contact with "C.J.", a child younger than 17 years of age, and not the spouse of JOSE Z. ALVARADO, by touching "C.J.'s" genitals with his hand, with the intent to arouse or gratify the sexual desire of any person, including his own sexual desire, Against the Peace and Dignity of the State.

Thus, to prove Appellant committed attempted aggravated sexual assault, the State was required to show that on or about April 1, 2007, Appellant intentionally or knowingly touched C.J.'s genitals with his hand with the intent to arouse or gratify his own sexual desire or that of another person and that C.J. was under the age of 17 and was not Appellant's spouse at the time of the offense. TEX. PENAL CODE ANN. § 21.11(a)(1), (b)(1)(West 2011).

A person acts intentionally, or with intent with respect to the nature of his conduct or to a

result of his conduct when it is his conscious objective or desire to engage in conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a)(West 2011). Proof of a culpable mental state generally relies upon circumstantial evidence. *Rodriguez v. State*, 793 S.W.2d 744, 748 (Tex.App. – San Antonio 1990, no pet.). Circumstantial evidence of an accused's mental state is not treated differently than circumstantial evidence of other elements and is reviewed under the same standard as direct evidence. *Laster v. State*, 275 S.W.3d 512, 521 (Tex.Crim.App. 2009). Moreover, intent can be inferred from an accused's actions, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004); *Maldonado v. State*, 998 S.W.2d 239, 243 (Tex.Crim.App. 1999); *Gallegos v. State*, 340 S.W.3d 797, 802 (Tex.App. – San Antonio 2011, no pet.). An accused's intent is a question of fact to be determined by the fact finder from all the facts and circumstances in evidence. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex.Crim.App. 1974). The specific intent required in proving indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981). An oral expression of intent is not required and the conduct itself is sufficient to infer intent. *C.F. v. State*, 897 S.W.2d 464, 472 (Tex.App. – El Paso 1995, no writ).

In his voluntary statement, Appellant admitted that he touched C.J.'s "private part" but stuck his hand in her under the mistaken belief that he was touching his wife and removed his hand when he heard C.J. speak. At trial, Appellant admitted touching C.J.'s buttocks, described the touching as a spanking, denied touching C.J.'s genitals, and claimed the touching was accidental because he believed he was contacting his wife. Rather, Appellant stated that it was not his intention to touch C.J. as he intended to spank his wife as he did routinely. Appellant denied that

9

he spanked C.J. to satisfy any sexual desire.

C.J. testified that when she awoke, she felt and saw Appellant's hand touching her genitals underneath the blue jeans and underwear that she had worn to bed and that Appellant was located where her mother usually slept. Ms. Aranda, the outcry witness, testified that C.J. cried upon being interviewed, pointed to an anatomical drawing to show that Appellant had touched her vagina, causing her pain, and disclosed that Appellant had unbuttoned the pants she was wearing and touched her under her underwear.

Having viewed this conflicting evidence in the light most favorable to the verdict, we find the trial court's inference of intent from the evidence is reasonable based upon the combined and cumulative force of all the evidence, and we conclude that any rational trier of fact could have found the essential element of intent beyond a reasonable doubt. *Hooper*, 214 S.W.3d at 16-17; *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

January 18, 2012                                  GUADALUPE RIVERA, Justice

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)

10